Irene **ROONEY**, Plaintiff,

v.

Donna E. **SHALALA**, Secretary of Health and Human Services, Defendant.

Civ. A. No. 93–CV–0615.

United States District Court, E.D. New York.

March 14, 1995.

Stanley F. Meltzer, Meltzer, Fishman, Madigan & Campbell, New York City, for plaintiff.

Stephen J. Riegel, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for defendant.

TRAGER, District Judge:

This social security appeal raises two legal issues: first, whether the Administrative Law Judge (ALJ) improperly refused to reopen two denials of benefits and, if so, whether plaintiff was so prejudiced by this failure to reopen that she is entitled to an immediate award of benefits.

### Background

Plaintiff, Irene Rooney, is a fifty-nine-year-old woman who left school when she was sixteen to work for Ohrbach's Department Store. She was a reliable employee for thirty-three uninterrupted years. Mrs. Rooney now suffers from a long list of disabilities. She contracted benign oral cancer in 1980, necessitating multiple surgical procedures. She has a progressive asthmatic disorder, chronic obstructive pulmonary disease and bronchitis, as well as arrhythmia and thyroid disfunction. In 1982, a virus left her blind in one eye. She has difficulty walking due to degenerative disc disease, sciatica, chronic spinal strain, and neural narrowing and osteoarthritis of the right knee. Her combined disabilities cause the plaintiff considerable pain.

In 1984, Mrs. Rooney's physical impairments made it impossible for her to continue her work as a sales manager. She was unable to perform the requisite standing, lifting, and walking. Despite her partial blindness, Ohrbach's did its best to accommodate a loyal employee by allowing her to stay on for a year under the title of auditor. While this kept her off her feet, her lack of training for the position, her inability to sit for any length of time, and her blindness made the accommodation unsuccessful.

On July 9, 1987, Mrs. Rooney filed an application for disability insurance benefits, claiming that she had been unable to work since April 27, 1985. She was denied bene-

fits initially and on reconsideration. On March 18, 1988, Mrs. Rooney received a Notice of Reconsideration (Notice) from the Department of Health and Human Services (HHS) which informed her that she had sixty days to request a hearing if she believed that the determination of her case was incorrect. The Notice went on to say:

> If you do not request a hearing of your case within the prescribed time period, you still have the right to file another application at any time.

Nothing in the Notice alerted the plaintiff to the fact that failure to file an appeal would mean a permanent loss of the opportunity to claim substantial benefits which might rightfully be hers. Indeed, the Notice seemed to imply that appealing and filing a new application were equivalent procedures.

From 1987 until 1992, Mrs. Rooney attempted to negotiate the Social Security Act pro se with disastrous results. Due to the misleading Notice, she was unaware that reapplication was not the same as requesting a hearing. Believing the two procedures to be equivalent, she filed a new application in October of 1988. This time, however, she alleged the onset of her disability as March 19, 1988, because HHS personnel had told her that the determination of her initial claim was by law afforded *res judicata* effect and that there was nothing she could do to alter the agency's finding that she was not disabled during the period preceding the date of denial. March 19, 1988, was the first day following the period that was precluded by her initial, failed application.

Mrs. Rooney's second application, filed in October of 1988 was also denied, on December 30, 1988. She received the same notice and the same advice from Social Security personnel. At no time was she advised that failing to appeal meant giving up the opportunity for a hearing and substantive entitlements.

On February 28, 1991, plaintiff made her third application, now claiming an onset date of December 31, 1988, the day following the denial of her second application. This third application was also denied in November of 1991, but by this time HHS had amended its Notice of Reconsideration to explicitly set forth the critical information, missing from the earlier form, concerning the adverse effect of failing to appeal. The new paragraph four reads:

> You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. You might lose benefits if you file a new application instead of filing an appeal. Therefore, if you think this decision is wrong, you should ask for an appeal within 60 days.

By this time proceeding with the aid of counsel, Mrs. Rooney finally requested and received a hearing before an ALJ, during which she sought a reopening of the first two denials. Counsel attempted to explain how the faulty Notice and agency advice had led the plaintiff to file successive applications, rather than appeal the original denial. The transcript reveals the ALJ's refusal to pursue this issue (Tr. 32–34). The ALJ simply interviewed the plaintiff and looked over the medical evidence in her file. He concluded that Mrs. Rooney was disabled, but only as of October 9, 1991. Since her insured status had expired in March of 1991, seven months before this ostensible "onset of disability," he found that she was not entitled to disability benefits. The Appeals Council declined to review the ALJ's decision. Plaintiff then appealed to this court. Currently before the Court are plaintiff's and defendant's cross-motions for judgment on the pleadings.

### Discussion

A claim of entitlement to social security benefits triggers due process protections. *Mathews v. Eldridge,* 424 U.S. 319, 332–33, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976). There is a significant property interest in the fair adjudication of a claimant's eligibility to receive disability benefits. *See Wright v. Califano,* 587 F.2d 345, 354–56 (7th Cir.1978). Due process requires that the Secretary give claimants notice reasonably calculated to apprise them of the pendency of action which may permanently affect their rights, and an opportunity to present their objections to that action. *Day v. Shalala,* 23 F.3d 1052, 1064–66 (6th Cir.1994). *See also Memphis Light, Gas and Water Div. v.*

*Craft,* 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

█ The Secretary's first two reconsideration notices, as outlined above, failed to give Mrs. Rooney adequate notice of the consequences of neglecting to ask for a hearing. In *Gonzalez v. Sullivan,* 914 F.2d 1197 (9th Cir.1990), the Ninth Circuit found the 1983 version of the Secretary's denial notice violated a claimant's fifth amendment right to procedural due process, noting that District Courts considering the issue had uniformly found the notice inadequate. The cases the *Gonzalez* court relied upon for this proposition, *Christopher v. Secretary of Health and Human Serv.,* 702 F.Supp. 41, 43 (N.D.N.Y. 1989); *Butland v. Bowen,* 673 F.Supp. 638, 640–42 (D.Mass.1987); *Dealy v. Heckler,* 616 F.Supp. 880, 884–87 (W.D.Mo.1984), were cited with approval by the Sixth Circuit in *Day. Accord Penner v. Schweiker,* 701 F.2d 256, 259–61 (3rd Cir.1983); *Aponte v. Sullivan,* 823 F.Supp. 277, 282 (E.D.Pa.1983).

The Secretary acknowledges in this proceeding that the notice in *Gonzalez* was constitutionally inadequate. She argues, however, that "the substance of the notice provided to claimant in that case . . . is not the same notice provided to plaintiff in this case." Def's Mem. Opp'n Mot. J. Plead. at 36. Despite the Secretary's arguments to the contrary, the Notice sent to Mrs. Rooney is identical in every material respect to the ones found constitutionally inadequate in *Gonzalez* and *Day.* The relevant paragraph of the unacceptable *Gonzalez* notice reads:

> If you believe that this determination is not correct, you may request that your case be reexamined. If you want this reconsideration, you must request it not later than 60 days from the date you receive this notice. You may make your request through any social security office. If additional evidence is available, you should submit it with your request. Please read the enclosed leaflet for a full explanation of your right to question the determination made on your claim. If you do not request reconsideration of your case within the

prescribed time, you still have the right to file another application at any time.

The corresponding paragraphs of the Notice sent to plaintiff in this case read:

> If you believe that the reconsideration determination is not correct, you may request a hearing before an administrative law judge of the Office of Hearings and Appeals. If you want a hearing, you must request it not later than 60 days from the date you receive this notice. You may make your request through any Social Security office. Read the enclosed leaflet for a full explanation of your right to appeal.
>
> If you do not request a hearing of your case within the prescribed time period, you still have the right to file another application at any time.

It is difficult to fathom the substantive distinction the Secretary is attempting to draw between the two notice forms. It is immaterial that the *Gonzalez* notice was sent subsequent to an initial determination, while in this case the notice came after reconsideration. What is relevant is that in both cases, the Secretary owed the claimant an explanation of the consequences of failing to request a hearing. The notices not only omit this critical information, they proffer reapplication as an alternative to appeal, as though the two are equivalent. One can only wonder how the Secretary expected a lay person to understand the niceties of the legal distinction between the procedures. Indeed, this "notice" seems almost deliberately crafted to divert the lay person from a timely appeal.

Disability benefits may only be awarded for periods of disability beginning one year before the date of the claimant's application. In refusing to reopen Mrs. Rooney's first application, the ALJ precluded her ability to recapture benefits that may have been due her from 1986 to 1990. Reopening would establish April 27, 1985, as the onset date of her disability and afford her the opportunity to contest the agency's original determination of her ability to work.

█ Although the Secretary's decision not to reopen a previously adjudicated claim is generally not reviewable by the courts, see

*Krumpelman v. Heckler,* 767 F.2d 586, 588 (9th Cir.1985), *cert. denied sub nom. Krumpelman v. Bowen,* 475 U.S. 1025, 106 S.Ct. 1222, 89 L.Ed.2d 332 (1986); *Davis v. Schweiker,* 665 F.2d 934, 935–36 (9th Cir. 1982), this Court does have jurisdiction to reopen if a claimant makes a colorable constitutional claim that the Secretary's decision not to reopen violates the Due Process Clause of the Fifth Amendment. *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977) (constitutional claim an exception to rule). The Secretary concedes that this court has jurisdiction under such circumstances, but asserts that under *Califano,* the constitutional claim must relate to the manner or means by which the Secretary decided not to reopen the prior decision, and not to the manner in which the original application was denied.

The distinction the Secretary wishes to make is between a constitutional defect in the original agency determination, and a constitutional defect in the ALJ's decision about whether or not to reopen. According to the Secretary, a district court may not remedy the agency's procedural violations, but only review whether the ALJ's refusal to reopen was arbitrary or capricious. This narrow reading of the constitutional grounds for reopening would mean that the agency's procedural violations could be forever immunized from review by the courts simply by being disregarded by an ALJ. The *Gonzalez* and *Day* courts addressed this precise mischief by establishing that the faulty Notice of Reconsideration forms (now no longer in use) give a district court a *per se* constitutional ground for reopening.

Moreover, there are grounds for reopening this case, even within the confines of the Secretary's narrow interpretation. The Secretary argues that the ALJ's decision not to reopen was neither arbitrary nor capricious, based on his interpretation of 20 C.F.R. §§ 404.988 and 404.989. Those sections allow reopening "for good cause" within four years of the Secretary's denial of a claim. "Good cause" is established when "[n]ew and material evidence is furnished" or when the evidence "clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a)(1),

(3). The ALJ found that neither determination was subject to "new and material evidence" nor "clearly erroneous," and he refused to reopen either one. Although *Day* had not been decided at the time of the hearing, the *Gonzalez* case had been. In any event, in light of the law as it stands now, it would be arbitrary and capricious to refuse to reopen the earlier denials and to afford plaintiff an opportunity to be heard, which she had been improperly denied because of the defective notices. Furthermore, the error here, as we shall see, was not a technical one, but prejudiced plaintiff's ability to prepare her claim properly.

Although a reviewing court is limited in its ability to determine *de novo* whether the claimant is disabled, *Dousewicz v. Harris,* 646 F.2d 771, 773 (2d Cir.1981), the substantial evidence standard of § 405(g), nevertheless, charges the court with the "responsibility to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act ... is remedial in purpose." *McBrayer v. Secretary of H.H.S.,* 712 F.2d 795, 798–99 (2d Cir.1983). Section 205(g) of the Act provides that "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgement affirming, modifying, or reversing the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The ALJ's failure to acknowledge the constitutional violations of plaintiff's rights and his refusal to reopen her prior applications would normally require that the case be reopened and remanded for full consideration. However, the fact that the plaintiff has now been waiting almost a decade for the proper adjudication of her claim argues against a remand, and for a review on the record as it stands, if at all possible. *Woody v. Secretary of Health & Human Servs.,* 859 F.2d 1156, 1162–63 (3rd Cir.1988) (eight years of administrative delay warrant no further administrative proceedings); *King v. Sullivan,* 757 F.Supp. 179, 188 (E.D.N.Y. 1991).

The record is somewhat muddied and because of this a remand might still be required. Despite the ALJ's nominal refusal

258

to reopen, he proceeded to review the evidence dating from plaintiff's first application and made a series of findings, some of which are supported by substantial evidence and some of which are not. In the end, however, his ultimate decision denying plaintiff's benefits rested on the fallacious assumption that her previous work was "sedentary," rather than "light," which led him to adjudicate her status under the wrong standard. Under the proper standard, it is clear that plaintiff is entitled to the award of benefits, at least since 1988, and more than likely since 1986. Whatever doubts might exist with regard to this earlier period should be resolved in her favor, because of the remarkable number of procedural and evidentiary errors in this case.

The question is when, if ever, did plaintiff become disabled within the meaning of the Act. The record is fairly complete after December, 1988, but there is uncertainty in the medical assessments and information relating to the period between the time plaintiff stopped working in 1985 and the date of her original application in 1987. The Secretary never developed a proper medical record for this plaintiff, despite the Act's charging her with that responsibility, 42 U.S.C. § 423(d)(5)(B), and as a practical matter, it cannot be resuscitated now. Accordingly, it would border on the absurd to send the matter back in the hope that in 1995, the ALJ would be able to determine definitively the precise state of her disability in 1985. Remanding for new findings with regard to the original application would invite the ALJ to undertake an exercise in conjecture and hypothesis. What evidence the court has relating to the 1985–1988 period will have to suffice; after December, 1988, the picture is much clearer.

■ At each level of review, determinations of disability are founded on a five-step sequential evaluation outlined in 20 C.F.R. § 404.1520. The procedure has been described as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which signifi-

cantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). The burden of proof is on the plaintiff for determinations made within the first four steps. Nevertheless, the Secretary has an obligation, as outlined above, to make sure the record is as complete as possible before basing a final decision on findings made within one of the four steps. For the fifth step, the burden falls on the Secretary to prove that the claimant—given her age, education, work experience, skill and physical shortcomings—has the capacity to perform a job in keeping with her exertional capacities, and that such a job exists in the national economy. *Id.* at 467; *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991).

■ Careful review of the record reveals several inconsistencies in the findings of the ALJ as he progressed through this five-step sequential evaluation. A number of his findings are simply not supported by substantial evidence. With regard to the first three steps, however, it is agreed that Mrs. Rooney has not engaged in substantial gainful activity since April, 1985, that she has had a significant combination of impairments since that time, and that no single one of her ailments is a "listed impairment" automati-

cally entitling her to benefits under Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P (1992).

20 C.F.R. § 404.1520 allows for situations in which a claimant's impairment might be deemed to "equal" a listed impairment. The ALJ's refusal to find that the combination of some number of Mrs. Rooney's multiple impairments was equivalent to a listed impairment is remarkable. Her Appendix 1 Chronic Pulmonary Insufficiency tests alone might warrant a finding of equivalence; one component of the relevant tandem pulmonary function readings barely surpasses the critical volume threshold, while the other is substantially deficient. Medical equivalence is defined in 20 C.F.R. § 404.1526 as "medical findings that are at least equal in severity and duration to the listed impairment." In *Huseby v. Heckler*, 746 F.2d 447, 449 (8th Cir.1984), the court found that although plaintiff's pulmonary insufficiency failed to meet the precise requirements of the Listing of Impairments, the combination of plaintiff's impairments warranted an outright reversal and an order that benefits be granted. The inquiry might well have ended with this step-three finding of impairment equivalence, but the ALJ refused to find such an equivalence, and this court cannot say that the refusal was arbitrary.

The ALJ then proceeded to a step-four evaluation of whether the plaintiff retained the residual functional capacity to perform her past relevant work. He concluded that she had remained capable of doing so until October, 1991. He based this conclusion on the assumption, for which there is no foundation in either the record or common sense, that her past relevant employment was the sedentary work of an auditor. Although it is true that for the fourth step, the claimant has the burden of proving inability to do her former work, the ALJ's identifying her former work as that of an auditor was not supported by substantial evidence. Ohrbach's employed the plaintiff for over thirty years as a sales manager. This was her past relevant employment. It is impossible to believe that Ohrbach's would hire a partially blind and ailing fifty-year-old to be an auditor. Mrs. Rooney had earned the store's good will, and it attempted to accommodate her despite her impairments. It behooves HHS to encourage employers and employees to seek alternatives to the cessation of employment. These attempts will be undermined if a failed accommodation can then be used against a plaintiff in her claim for benefits.

Having decided, against the evidence, that Mrs. Rooney's employment was auditing, the ALJ found nothing in the medical record prior to October, 1991, to indicate that she could not sit for six hours a day and review papers—the physical requirements of a sedentary job. But sales jobs, managerial or otherwise, are listed in the Dictionary of Occupational Titles as at least "light" in their exertional requirements. As defined in 20 C.F.R. § 404.1567(b), such work entails frequent lifting and significant periods of walking and standing. The proper step-four inquiry should have been whether the plaintiff was capable of performing the "light" exertions of her previous work as a sales manager.

In this regard, it is noteworthy that in June of 1988, a doctor from the same state agency that determines disability for Social Security purposes examined Mrs. Rooney to determine her welfare status. This doctor listed nine impairments, including disc disease and chronic obstructive pulmonary disease—neither of which is an overnight phenomenon—in an assessment of Mrs. Rooney's employability. He found her "temporarily unemployable" (Tr. 250). Mrs. Rooney was over fifty years old when this report was made. Although this report is not binding on the Secretary, it is evidence of plaintiff's disabilities. In December of 1988, another state agency doctor found chronic spinal strain, bronchitis, asthma, shortness of breath and obstructive restrictive effects on PFT (pulmonary function test) on minimal exertion (Tr. 265–274). The diagnoses of these two physicians do not even take into account plaintiff's blindness and oral cancer.

According to the ALJ's own finding, the plaintiff was incapable of "prolonged standing and walking, lifting and carrying over ten pounds," at least after December, 1988. In other words, after that date, she was incapable of performing "light" work, such as that

required by her past relevant employment as a sales manager. This was at a time when her coverage had not yet expired.

█ The inquiry should then have progressed to a step-five analysis of Mrs. Rooney's capacity to perform some other kind of work in the period after 1988. *See Berry, supra,* 675 F.2d at 467. Once a disability claimant proves that her impairment prevents her from continuing her previous employment, the burden falls on the Secretary to prove that the claimant retains the residual functional capacity to perform alternative substantial gainful work which exists in the national economy. *Id. See also Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). At this stage, not only a claimant's impairments, but her age, education, and work experience are factored into the determination of her ability to work. 20 C.F.R. § 404.1560(c) tells claimants:

> If we find that you can no longer do the kind of work you have done in the past, we will then consider your residual functional capacity together with your vocational factors of age, education and work experience to determine whether you can do other work. By other work we mean jobs that exist in significant numbers in the national economy.

Plaintiff became a "person approaching advanced age," as defined in 20 C.F.R. § 404.1563(c), when she turned fifty in 1985. The ALJ found that plaintiff had a limited education, under 20 C.F.R. § 404.1564, and that she did not have any acquired work skills transferable to other employment, under 20 C.F.R. § 404.1568. To assess the impact of these factors on a claimant's capacity to work, the Secretary must refer to the Medical Vocational Guidelines (the "grids"), outlined in 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986). The grids are rules, organized into tables, which list the exertional requirements and vocational factors which will lead to a directed step-five determination of either "disabled" or "not disabled".

According to the ALJ's own findings, the plaintiff should have been found disabled, at least after 1988. At that time she was limited to sedentary work, which would place her in Table No. 1. That table includes Rule 201.09 which mandates that a claimant who is capable only of sedentary exertions, who is closely approaching advanced age, who has a limited education and skills that are not transferable, is to be found disabled. Rule 200.00 provides that where, as here, a claimant's residual functional capacity and vocational factors coincide with all the criteria of a particular rule, the rule directs a determination of disability. Had the ALJ conducted a step-five analysis, he would have found the plaintiff disabled at least as of December, 1988, when she was still in insured status. Simply on the basis of her strength limitations and the vocational factors of her age, education and skills, the grids absolutely direct a determination of "disabled" starting in December, 1988, the date after which the ALJ found plaintiff could no longer sustain "light" exertions.

For the period between 1985 and 1988, the ALJ found that plaintiff remained capable of performing the "light" exertions of her previous job as a sales manager. He supported this conclusion by saying that there is nothing in her medical record, prior to December, 1988, to indicate that she could not perform "light" tasks. Clearly, Ohrbach's disagreed with the ALJ's assessment. The store felt it necessary to move plaintiff from her "light" job to a "sedentary" job, and even this temporary sedentary position proved to be beyond her capacities.

Although in 1987 the Secretary deemed that Mrs. Rooney was able to perform the lifting and walking exertions of "light" work, this finding is not mirrored in the reports of doctors who examined her. Indeed, the medical evidence is that these activities may very well have been beyond the plaintiff's capacity when she was first denied benefits. Besides repeated surgical procedures for cancerous oral lesions, the presence of irregular heartbeats and hypothyroidism (Tr. 170–173), and the left optic neuropathy which led to her eventual blindness (Tr. 181–182), plaintiff's treating physician Dr. Steven Diamond diagnosed her conditions in January of 1986 as including upper respiratory infection, asthma, bronchitis, and chest and lower back pain.

To sustain its finding that Mrs. Rooney was capable of "light" work-related tasks, the Secretary relied on the slim reed of residual functioning capacity assessments made by state doctors who never actually examined her. While it may be standard procedure to rely on assessments made by nonexamining state doctors, these doctors are supposed to base their evaluations on reports filed by a claimant's treating physicians, which normally include direct appraisals of the claimant's functional capacities. Although it is true that Mrs. Rooney's physicians did not state in the records they forwarded to HHS that she had lost the "residual capacity to work," it is also true that treating physicians do not necessarily make conclusory statements to meet governmental agency standards when reporting the medical findings of their examinations. Plaintiff's treating physicians were never asked for assessments of her capacity to do work, either "sedentary" or "light". Mrs. Rooney was, at that time, proceeding pro se and perhaps did not know to ask them to make such assessments. To make matters worse, the medical records completed by agency doctors are shamefully inarticulate. Where forms ask for verbal assessments, officials have scrawled mute dashes here and there, and lines are drawn through entire sets of boxes meant to be checked off individually. Many of the agency forms are completely unintelligible. The record is a testament to inattention and disregard.

The pragmatic truth is that plaintiff was not capable of continuing her previous employment; this was the determination made by her employer. Orbach's was clearly not disenchanted with Mrs. Rooney as an employee; on the contrary, the store did what it could to retain her services, albeit in a "sedentary" capacity. She was a fifty-year-old woman with a litany of impairments who had worked hard all her life. There is no indication that the unsuccessful experiment with auditing was due to any malingering on plaintiff's part. A plaintiff's long and honorable work history justifies the inference that when she stopped working she did so for the reasons testified to. *Singletary v. Secretary of H.E.W.*, 623 F.2d 217, 219 (2nd Cir.1980). *Accord Leftenant v. Schweiker*, 543 F.Supp. 989, 993 (S.D.N.Y.1982).

If we accept the ALJ's questionable assessment that plaintiff could still perform "light" work between 1985 and 1988, however, the grid applicable to this earlier period would be Table No. 2. Although this grid alone, given only plaintiff's exertional limitations, would not lead to a directed determination of disabled, the addition of her other "nonexertional" impairments might well have tipped the scales in favor of a determination of disability. In using the grids, Section 200.00(e)(2) provides that:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R., Pt. 404, Subpt. P, App. 2 (1986).

In other words, Section 200.00 provides, as outlined above, that if a claimant meets the exertional and vocational criteria of a particular rule, that rule directs a disability determination. If, however, not every criterion is met, a claimant's nonexertional impairments (i.e., those that do not bear directly on physical strength) are also to be factored into the disability assessment. Plaintiff's "nonexertional impairments" included her partial blindness, benign oral cancer, thyroid disfunction, and chest and lower back pain. Therefore, even if the ALJ was correct in finding that she retained the strength to perform "light" work, a step-five analysis using the grids as a framework and plaintiff's nonexertional impairments as aggravating circumstances, might well have found her disabled for the period between 1985 and 1988.

A careful review of the entire medical and procedural record compels a determination that the plaintiff was disabled within the

meaning of the Social Security Act, at least since December, 1988. At this stage, it is next to impossible to say what a timely hearing, a more developed record, and a correct application of the five-step sequential analysis would have determined with regard to plaintiff's disability between 1985 and 1988. Equity and good conscience preclude making Mrs. Rooney wait any longer for the fair adjudication of her claim. Though plaintiff might have been able to augment the record earlier, had the Secretary properly informed her of her rights, the burden should now be on the Secretary to prove that the plaintiff was not disabled in the relevant period. The Secretary cannot realistically do this now. Therefore, the 1987 application and the original date of April 27, 1985, will be used for determining the onset of plaintiff's disability.

### Conclusion

Accordingly, plaintiff's motion for judgment on the pleadings is granted. Plaintiff is hereby awarded disability benefits from April 27, 1985, to the present time and continuing.