**James ARDITO, Plaintiff**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security**[1]

**No. 3:01 CV 1834(JGM).**

United States District Court, D. Connecticut.

Oct. 11, 2002.

---

**1.** Jo Anne B. Barnhart is substituted for Larry G. Massanari as Commissioner of the Social Security Administration, pursuant to FED. R. CIV. P. 25(d)(1).

Ivan Michael Katz, Law Offices of Ivan M. Katz, New Haven, CT, for Plaintiff.

Ann M. Nevins, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

*RULING ON PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE DECISION OF THE COMMIS-SIONER AND DEFENDANT'S MO-TION FOR ORDER AFFIRMING THE DECISION OF THE COMMIS-SIONER*

MARGOLIS, United States Magistrate Judge.

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), as amended, seeks review of a final decision, by the Commissioner of Social Security ["the Commissioner"], that denied plaintiff Disability Insurance Benefits ["DIB"].

## I. ADMINISTRATIVE PROCEEDINGS

On June 21, 1983, plaintiff filed an application for DIB. (*See* Certified Transcript of Administrative Proceedings, filed January 28, 2002 ["Tr."] at 454–57). The application was denied August 18, 1983. (Tr. at 460). The language of the denial notice and the procedural steps that plaintiff took thereafter are significant in this case. Plaintiff remained out of work until April 1987. (Tr. at 499). In November 1989, plaintiff slipped, fell and injured his back for the second time (Tr. at 500), causing him to file a new application for benefits on November 23, 1993. (Tr. at 77–79). Neither party contests that this application was denied. On January 25, 1994, plaintiff filed a request for reconsideration (Tr. at 81–84) and the denial of benefits was affirmed on reconsideration.[2] On April 11, 1994, the Social Security Administration ["SSA"] received a timely-filed request for a hearing before an Administrative Law Judge ["ALJ"], regarding the November 23, 1993 application. (Tr. at 85). A hearing was held on February 27, 1995 before ALJ Samuel Kanell. (Tr. at 26–76, 652–702). Plaintiff was represented by counsel at the hearing. (Tr. at 26, 87, 652, 638). On July 25, 1995, ALJ Kanell issued his decision finding that plaintiff did not meet the disability insured status requirements of the Social Security Act for an individual age 51 because he only had at most 16 quarters of coverage in any relevant 40 quarter period. (Tr. at 10–16, 635–41). Plaintiff thereafter appealed the ALJ's de-

---

**2.** The reconsideration decision is not found in   the record.

cision on August 9, 1995. (Tr. at 8, 645). Plaintiff's request for review was denied by the Appeals Council on February 25, 1997, rendering the ALJ's decision, dated July 25, 1995, the final decision of the Commissioner of Social Security. (Tr. at 5–7, 649–50).

On March 27, 1997, plaintiff commenced litigation in the District Court to reverse the adverse decision of the Commissioner. *Ardito v. Chater*, 3:97 CV 561(AHN). The Commissioner moved for a voluntary remand and a "sentence four" judgment. (Tr. at 719–21). The motion was granted by U.S. Magistrate Judge Holly B. Fitzsimmons on January 8, 1998 (*id.*) and judgment was entered on January 15, 1998. (Tr. at 722). On March 2, 1998, the Appeals Council remanded the matter to the New Haven Hearings Office. (Tr. at 723–24). On June 12, 1998, a second hearing was held before ALJ Kanell (Tr. at 592–634), and on September 25, 1998 ALJ Kanell issued a second decision denying benefits to plaintiff. (Tr. at 582–91). On November 2, 1998, plaintiff took a timely appeal of the September 25, 1998 decision to the Appeals Council. (Tr. at 579–81). The Appeals Council concluded that there was no basis for jurisdiction and affirmed the ALJ's ruling on August 5, 2001, thus constituting the final decision of the Commissioner. (Tr. at 570–71).

Plaintiff filed this current action on September 26, 2001. (Dkt.# 1). On February 15, 2002, defendant filed her answer and the administrative record. (Dkt.# 8). This case was transferred to this Magistrate Judge by United States District Judge Janet Bond Arterton on May 17, 2002 by consent of the parties. (Dkt.# 10). Pending before the court are plaintiff's Motion for Order Reversing the Decision of the Commissioner and Remand, filed June 13, 2002 (Dkt.# 12) and defendant's Motion for Order Affirming the Decision of the Commissioner, filed July 19, 2002 (Dkt.# 14). For the reasons stated below, plaintiff's Motion for an Order Reversing the Decision of the Commissioner and Remand (Dkt.# 12) is *granted in part and denied in part* and defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt.# 14) is *denied in part and granted in part.*

## II. FACTUAL BACKGROUND

Unlike most appeals of denials of DIB, plaintiff's medical condition is not at issue in this case. Instead, the issue in the pending motions is whether the ALJ's decision not to reopen and re-evaluate plaintiff's 1983 denial, based on his finding that plaintiff lacks insured status and does not fall within the coverage afforded by Social Security Ruling ["SSR"] 95–1p, is supported by substantial evidence. This Court's ruling is limited to the issue of whether jurisdiction exists to reopen and review plaintiff's August 1983 denial.

Plaintiff is a 59 year old male who is married with two adult children, approximately ages 30 and 21. (Tr. at 607). Plaintiff attended high school through the ninth grade and he received his general equivalency diploma at age 40. (Tr. at 605). On or about July 11, 1980, plaintiff suffered a back injury while working as an ironworker. (Tr. at 454). On or about June 1, 1981, plaintiff had back surgery. (Tr. at 135). Thereafter, on June 21, 1983, plaintiff filed an application for disability benefits. (Tr. at 454–57). Plaintiff was 39 years old at the time. (Tr. at 602). On August 18, 1983, plaintiff's application was denied. (Tr. at 460). The denial letter provided:

If you believe that this determination is not correct, you may request that your case be re-examined. If you want this reconsideration, you must request it not later than 60 days from the date you

receive this notice .... *If you do not request reconsideration of your case within the prescribed time period, you still have the right to file another application at any time.*

(*Id.*)(emphasis added). Plaintiff did not appeal his denial.

For the next six years, plaintiff had no earnings. As a result of his injury, plaintiff did not work from the first quarter of 1981 to the first quarter of 1987 (Tr. at 90) but in 1987 plaintiff returned to employment (Tr. at 30, 58) as an ironworker on light duty. (Tr. at 612).[3] Plaintiff worked from 1987 until November 1989 when he sustained another injury to his back when he slipped on plastic. (Tr. at 613–14, 59). On November 23, 1993, plaintiff filed a new application for benefits. (Tr. at 77–80). Although there is no copy of the denial, neither party disputes that this application was denied. Plaintiff has not been employed since his injury in 1989 and no doctor has cleared him to return to work since that time. (Tr. at 614). Plaintiff has been receiving Worker's Compensation benefits since his injury in November 1989. (Tr. at 614–15).

On January 25, 1994, plaintiff filed a request for reconsideration (Tr. at 81–84) and the denial of benefits was affirmed thereafter.[4] On April 8, 1994, plaintiff sought a hearing on the November 23, 1993 application and on February 27, 1995 a hearing was held before ALJ Kanell. (Tr. at 26–76). At the hearing, plaintiff's counsel argued that the ALJ retained jurisdiction over this case despite the fact that the initial determination for benefits was made in 1983. (*See* 20 C.F.R. § 404.988(b), (c)). Plaintiff's counsel argued that based on the Acquiescence Ruling ["AR"] 92–7(9), and based on the failure of the notice to advise plaintiff of the effects that would follow if a request for reconsideration was not filed, the ALJ had the authority to reopen plaintiff's initial application and find plaintiff disabled even though the four year limitation period had past since the denial of the initial application. (Tr. at 30; *see* 20 C.F.R. §§ 404.988(b), (c)). Plaintiff's counsel argued that pursuant to 20 C.F.R. § 404.130(f), the 20–40 test[5] was suspended during plaintiff's period of disability from 1982–1987. Thus, according to his counsel, the time plaintiff accumulated during the 36–month period he was employed from 1987–1989 could be "piggybacked" on the quarters from the period prior to the time he became disabled. (*See* Tr. at 31). ALJ Kanell rejected this argument and issued an unfavorable decision on two grounds: (1) plaintiff did not meet the insured status requirements because plaintiff only had 16 quarters of coverage to date during the preceding 40 quarter period (*see* Tr. at 14); and (2) pursuant to 20 C.F.R. § 404.988(b) and (c), a determination denying a claim arising under Title II of the Social Security Act could not be reopened more than four years after the date of the initial determination in that claim, except under circumstances that were not applicable to this claim. (Tr. at 14–15).

On March 26, 1997, plaintiff commenced an action in the District Court seeking reversal and/or remand of the Commissioner's adverse decision. *Ardito v. Chater*, 3:97 CV 561(AHN); Dkt. # 1 at 3 ¶ 15.

---

**3.** Light duty work consisted of installing aluminum instead of installing heavy beams as he did in the past. (*See id.*)

**4.** *See* n. 2 *supra.*

**5.** The 20/40 test requires that a claimant have 20 quarters of coverage during the 40–quarter period ending with the quarter including the alleged month of onset of his disability. (*See* 20 C.F.R. § 404.130(b)(2)).

On January 8, 1998, the District Court granted the Commissioner's motion of October 29, 1997 to voluntarily remand the case and enter a "sentence four" judgment. (Tr. at 719–21). The Appeals Council remanded the matter to the New Haven Hearings Office on March 2, 1998, noting that under SSR 95–1p, the receipt of a purportedly defective notice, like the denial notice at issue here, does not establish good cause for late filing. (Tr. at 723–24). In accordance with the directive of the Appeals Council, a second hearing was held on June 12, 1998 before ALJ Kanell to establish whether plaintiff had good cause for failing to file a request for reconsideration on his June 21, 1983 application within the prescribed 60 day period after the initial denial. (Tr. at 592–634).

At the hearing, plaintiff testified extensively about his recollection of the denial of his June 21, 1983 application. (Tr. at 603–05). Plaintiff testified that he did not recall receiving anything in writing informing him of his denial; rather, he remembers speaking with someone from the Social Security office in New Haven who informed him that his application had been denied and that he could file another application at any time. (*Id.*). When the ALJ asked plaintiff whether he called the Social Security office or the office had called him, plaintiff responded: "Honestly I don't remember, but I remember they called me and told me that I was denied, and that was it." (Tr. at 605). Although plaintiff acknowledged that the letter from the SSA was properly addressed to him[6] (Tr. at 604), he testified he has searched his records (Tr. at 631) and that "[i]f he did get a notice, [his] wife would have had it." (Tr. at 603). Plaintiff testified that after he received word of the denial, he did not appeal nor did he contact a lawyer. (Tr. at 610).

ALJ Kanell issued a decision on September 25, 1998 denying plaintiff benefits on the grounds that plaintiff did not have sufficient quarters of coverage to meet the disability insured status defined in 20 C.F.R. § 404.130 (Tr. at 590) and that the provisions of SSR 95–1p were not applicable because plaintiff offered no evidence that he was misled by the language in the notice of August 18, 1983. (Tr. at 589). The ALJ added:

> [a]bsent a transcript of the alleged telephone conversations, the [ALJ] has no reason to believe that the Social Security Administration representative failed to tell him the that adverse consequences could result if he failed to file a timely request for reconsideration. It is possible that he was given such information and failed to act upon it.

(Tr. at 588). On October 28, 1998, plaintiff filed a timely appeal with the Appeals Council. (Tr. at 579). The Appeals Council affirmed the ALJ's ruling making the ALJ's decision the final decision of the Commissioner. (Tr. at 570–71). The Appeals Council held that under SSR 95–1p, the issue was not whether the notice sent to plaintiff in August 1983 was defective, but whether as a result of the notice, plaintiff did not file a timely appeal. (*Id.*). The Appeals Council further ruled that "mere receipt of [a defective] letter will not, by itself, establish 'good cause.' The claimant must specifically link his failure to file a timely appeal to the defective wording of the notice," and since plaintiff cannot recall whether he received the notice in question, he had failed to establish a link. (Tr. at 570).

On September 26, 2001, the instant action was filed in federal court. (Dkt.# 1). The plaintiff alleges that he "has been and is disabled within the meaning of the So-

---

**6.** Plaintiff's counsel notes that the Zip Code was incorrect. (Dkt. # 13, at 9).

cial Security Act" and he has "proven his insured status" and the findings and conclusions that state otherwise are in error and are not supported by substantial evidence. (Dkt. # 1, at ¶¶ 24, 26 & 27). Further, plaintiff argues that he has furnished proof that the Commissioner's refusal to reopen and grant benefits based upon the June 21, 1983 application was "wrongful and in violation of the procedural due process rights" guaranteed by the Fifth Amendment of the Constitution and "that the Commissioner is estopped from asserting the alleged *res judicata* effect of that prior determination." (*Id.* at ¶ 25). Plaintiff seeks to have the decision of the ALJ, the Appeals Council and the Commissioner reviewed, revised and set aside, his claim for disability benefits be allowed, and the Commissioner be ordered to make payment of his claim. (*Id.* at ¶ 27(b)). The Commissioner filed her answer and the 973-page administrative record on February 15, 2002. (Dkt. # 8).

On May 17, 2002, the parties consented to trial before this Magistrate Judge and the case was transferred. (Dkt. # 10). Shortly thereafter, on June 13, 2002, plaintiff filed his Motion to Reverse the Decision of the Commission and to Remand. (Dkt. # 12). Plaintiff asserts that the "basic issue for this Court's determination" is "whether there are grounds for the August 18, 1983 denial to be reopened and reevaluated." (Dkt. # 13, at 4). Plaintiff argues that on the basis of *Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir.1990) and AR 92–7(9), the receipt of the denial letter of August 1983, without more, entitles him to a reopening of the 1983 application. (Dkt. # 13, at 8). Plaintiff further asserts that he is a member of the class certified in *Dixon v. Shalala*, 54 F.3d 1019 (2d Cir.1995) and is entitled to relief afforded to class members. (Dkt. # 13, at 5–7). Additionally, plaintiff asserts that the ALJ erred in finding that plaintiff did not detri-mentally rely on the language of the denial notice and thus is entitled to have his 1983 application reopened pursuant to SSR 95–1p. (Dkt. # 13, at 15–17).

Defendant filed her Motion to Affirm the Decision of the Commissioner on July 19, 2002. (Dkt.# 14). Defendant asserts that the only relevant issue before the Court is "whether plaintiff was able to establish, under SSR 95–1p, that he failed to file a timely request for administrative review of a denial of his claim" based on the admittedly deceptive and misleading language contained in the August 1983 denial notice. (Dkt. # 15, at 2–3). Defendant further maintains that plaintiff is not a member of the *"Dixon"* class as plaintiff claims (Dkt. # 15, at 3–4), plaintiff is not entitled to relief afforded in *Gonzalez* and AR 92–7(9) because the parties are not bound by Ninth Circuit precedent, and plaintiff has failed to show that he was misled by the August 1983 denial notice. (Dkt. # 15, at 4–6).

### III. STANDARD OF REVIEW

The scope of review of a Social Security disability determination involves two levels of inquiry. The court first must decide whether the Commissioner applied the correct legal principles in making the determination. Next, the court must decide whether the determination is supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more that a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir.1998). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel*, 23 F.Supp.2d 179, 189 (D.Conn.1998); *Rodri-*

*guez v. Califano,* 431 F.Supp. 421, 423 (S.D.N.Y.1977). The court may not decide facts, reweigh evidence or substitute its judgment for that of the Commissioner. *See Dotson v. Shalala,* 1 F.3d 571, 577 (7th Cir.1993). The court must scrutinize the entire record to determine the reasonableness of the ALJ's findings.

Since this case has not progressed to the disability determination stage, this Court will only review the reasonableness of the ALJ, the Appeals Council, and the Commissioner's decisions. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing" and that "[t]he findings of the Commissioner, as to any fact, if supported by substantial evidence, shall be conclusive."

## IV. DISCUSSION

Plaintiff has taken an appeal from the Appeals Council's August 5, 2001 decision affirming ALJ Kanell's denial of benefits on September 25, 1998. The ALJ based his decision on the following grounds: (1) plaintiff was not eligible for disability benefits from his November 23, 1993 application because plaintiff had acquired no more than 16 quarters of coverage in a 40 quarter period ending with the quarter he allegedly became disabled; (2) plaintiff was not a member of the *Dixon* class and thus was not eligible for the relief available to class members; (3) plaintiff failed to provide evidence of good cause to justify his failure to file a timely request for reconsideration, following his denial of his June 21, 1983 application for benefits; (4) plaintiff had not shown that he was misled by the denial notice received August 18, 1983, thus the provisions of SSR 95–1p were not

applicable; and (5) plaintiff was not entitled to the relief afforded to the claimants in *Gonzalez.* (Tr. at 585–91).

### A. Plaintiff's Insured Status

A claimant's work history is a prerequisite to a determination of eligibility for disability benefits. In order for a claimant to qualify for disability benefits, in addition to proving disability under the statute, a stage this plaintiff has not yet reached, a claimant must have "insured status." *See* 20 C.F.R. § 404.130. For plaintiff to have disability insured status, plaintiff must satisfy the 20/40 test. *See* 20 C.F.R. § 401.130(b). The 20/40 test requires that plaintiff have at least 20 quarters of coverage in a 40 quarter period ending with the quarter that he allegedly became disabled. *See* 20 C.F.R. § 404.130(b)(2). It is undisputed that plaintiff did not work from the first quarter of 1981 to the first quarter of 1987, and when plaintiff returned to work in 1987, he only worked until the last quarter of 1989. Thus, the record reveals that plaintiff only worked 16 of the past 40 quarters preceding his 1989 injury. Plaintiff argues that his insured status is contingent on the reopening of his June 21, 1983 application and a finding of disability from July 1980. (Dkt. # 13, at 5). Plaintiff asserts that a finding of disability from July 1980 would continue until 1987 when he returned to work; thus, pursuant to 20 C.F.R. § 404.130(f), plaintiff would now be eligible for benefits because the 40 quarter period would include all quarters in the period of disability beginning July 1980 because doing so would qualify plaintiff for benefits. *(Id.; see also* 20 C.F.R. § 404.130(f)). Thus, in order for plaintiff to establish "insured status," he must establish that his June 21, 1983 application must be reopened. Plaintiff asserts three grounds upon which his 1983 application may be reopened and re-evaluated: (1) plaintiff is a class member described in

*Dixon v. Shalala,* and thus he is entitled to the remedies afforded that class; (2) plaintiff had good cause for failing to timely file a request for reconsideration, so therefore he is entitled to the remedies set forth in SSR 95–1p; (3) and plaintiff is entitled to a review because he was misled by the language of the denial and the receipt of the defective notice itself entitles him to avail himself of the remedies afforded him by *Gonzalez* and AR 92–7(9). (Dkt. # 13 at 5–7, 8, 12–20).

### B. Dixon v. Shalala Class Membership

Plaintiff argues that he is included in the class described in *Dixon* and is therefore entitled to have his final determination reopened and readjudicated from the earliest potential entitlement date through the date of readjudication. *See Dixon,* 54 F.3d at 1034. Plaintiff claims that his June 1983 application was denied on the basis that he did not have a "severe" impairment. (Dkt. # 13, at 7; *See Dixon,* 54 F.3d at 1020). Plaintiff further asserts that the District Court's 1992 order "constituted the class to include '. . . applicants whose benefits were denied or terminated after June 1, 1976,' an expansion of the previously entered order which involved those who were denied or terminated after July 20, 1983." (Dkt. # 13, at 6; *Dixon,* 54 F.3d at 1021). Plaintiff argues that he is included in this class using either date: the latter date if the "key date" is the August 18, 1983 denial, and the former date if the "key date" is the June 21, 1983 application. (Dkt. # 13, at 6). The ALJ and the Appeals Council have repeatedly rejected plaintiff's claim, finding that plaintiff is not a member of the class in *Dixon.* (Tr. at 585, 649). The Court agrees.

When the class was originally certified by the District Court, the class consisted of "[a]ll persons in the State of New York. . . ." *Dixon v. Heckler,* 589 F.Supp.

1494, 1511 (S.D.N.Y.1984). The Court of Appeals did not expand the class beyond the State of New York; rather in its decision, the Court of Appeals reiterated that the class is a "*statewide* class." *Dixon,* 54 F.3d at 1024 (emphasis added). Although plaintiff's claim likely fails within the time frames set forth by both the Remedial Order and the District Court's initial order, plaintiff is not a class member because plaintiff never indicated that he was a resident of New York at any relevant time. Consequently, the ALJ and Appeals Council did not err in finding that plaintiff is not entitled to the remedies afforded to the *Dixon* class.

### C. Good Cause for Failure to File a Timely Request for Reconsideration

Relying on the June 12, 1998 hearing transcript, the ALJ found that plaintiff failed to establish good cause for failing to file a timely request for reconsideration, following the denial of his June 21, 1983 application for benefits. (Tr. at 588). Generally a request for reconsideration and a request for a hearing before an ALJ must be filed within 60 days of the receipt by the claimant of the notice of the determination being appealed. *See* 20 C.F.R. §§ 404.900(a), 404.933(b), 416, 1409(a). However, a claimant can request an extension of the 60–day time period if the claimant can show good cause. *See* 20 C.F.R. § 404.911(a). "In determining whether [a claimant] has shown good cause for missing a deadline to request review" the Agency considers "(1) What circumstances kept [the claimant] from making the request on time; [and] (2) Whether [the Agency's] action misled [the claimant]. . . ." 20 C.F.R. § 404.911(a). SSR 95–1p incorporates these regulatory provisions and goes one step further, allowing a specified class of claimants who show good cause for missing the deadline to request

review, the opportunity to have the request for review processed and the prior administrative action deemed not final or binding for purposes of applying the rules on either *res judicata* or administrative finality. SSR 95–1p 1995 (S.S.A.). SSR 95–1p applies to claimants, like plaintiff, who "received an initial or reconsideration determination notice dated prior to July 1, 1991, which did not state that filing a new application instead of a request for administrative review could result in a loss of benefits." SSR 95–1p 1995 (S.S.A.). SSR 95–1p applies to plaintiff as his August 18, 1983 denial notice stated "If you do not request reconsideration of your case within the prescribed time period, you still have the right to file another application at any time." (Tr. at 460).

■ In order for plaintiff to avail himself of the remedy afforded claimants who fall within the coverage of 95–1p, he must provide

> an acceptable explanation, based on all the pertinent facts in a particular case, linking [his] failure to file a timely request for administrative review to the absence in the notice of a statement that filing a new application instead of a request for administrative review could result in a loss of benefits.

SSR 95–1p 1995 (S.S.A.). When making his determination of good cause, the ALJ must consider (1) plaintiff's explanation of what he thought the notice meant and how that understanding influenced his action; (2) plaintiff's mental condition and educational level; (3) plaintiff's ability to speak and understand the English lan-

guage; (4) the time that elapsed before plaintiff filed a subsequent claim or sought administrative review; and (5) whether plaintiff was represented by an attorney. *See* 95–1p 1995 (S.S.A.). The hearing transcript and the ALJ's decision reveal that although the ALJ did inquire into each of the above-referenced factors (Tr. at 586, 603–09, 610–611), his conclusion is not supported by substantial evidence.

■ When the ALJ inquired into plaintiff's understanding of the procedural requirements at the time his June 1983 application was denied, plaintiff testified that although he did not receive a written notice,[7] he did speak with an employee from the New Haven District Office for the SSA who informed him that he was denied and that if he wanted to apply at a later date, he could reapply. (Tr. at 603, 605). After plaintiff received this notice of denial, he did not request reconsideration. Rather, in November 1989, plaintiff filed a new application for benefits.

■ The decision to reopen a final agency decision is not usually subject to judicial review; however, an exception exists when a colorable constitutional claim is presented. *See Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir.1991); *see also Rooney v. Shalala*, 879 F.Supp. 252, 257 (E.D.N.Y.1995). The denial notice that plaintiff received in 1983 violated his procedural due process rights as it failed to explain the consequences of reapplying for benefits rather than seeking further ad-

7. The parties do not contest that a denial notice was sent to plaintiff in the normal course of business. (Tr. at 460; Dkt. # 13, at 9). Plaintiff's counsel points out that although the notice was properly addressed, the Zip Code was incorrect. (Dkt. # 13, at 9). The transcript, however, reflects plaintiff's understanding that the letter was in fact prop-

erly addressed, including the Zip Code. (Tr. at 604). Either way, at the 1998 hearing, approximately 15 years after the denial was issued, plaintiff testified that he did not receive the denial or could not recall receiving any paper informing him of his denial. (Tr. at 603, 604–05, 608, 624–25, 629, 631–32).

ministrative review. *See Day v. Shalala,* 23 F.3d 1052, 1065–66 (6th Cir.1994); *see also* Tr. at 460. In order for plaintiff to succeed on the merits of his constitutional claim, plaintiff must show that he relied on the flawed notice and was prejudiced. *Day,* 23 F.3d at 1066. A claimant who receives an inadequate denial notice, reapplies and is thereafter met with either a *res judicata* defense or a reduced award, has detrimentally relied on faulty notice. *Id.* While proceeding *pro se* in 1983, plaintiff did not receive any information regarding the consequences of reapplying versus requesting a review of his earlier claim. After receiving this information, whether it was just orally conveyed or in writing as well, plaintiff failed to file an appeal based on good faith reliance on the inadequate notice. Like the plaintiff in *Rooney,* plaintiff acted in conformity with the notice and several years after he was denied, he filed a new application requesting reopening. *See Rooney,* 879 F.Supp. at 255.

Defendant argues that because plaintiff does not remember whether he received the notice, it is "clear" that plaintiff cannot demonstrate detrimental reliance on the notice language and therefore there can be "no finding of good cause." (Dkt. # 15, at 6). Plaintiff testified that he received the defective notice of his denial by way of a telephone call from a SSA employee. (Tr. at 605). Plaintiff also testified that he could not recall who initiated the call. (*Id.*). Plaintiff's counsel asserts that the "most plausible scenario" is that plaintiff received the defective notice and then "initiated the call to the Social Security Administration for clarification." (Dkt. # 13, at 14–15, 17).

The ALJ tacitly agreed with plaintiff's argument, as he acknowledged in his decision: "All the determinations relating to

disability applications must be made in writing, with copies of such determinations mailed to the applicants." (Tr. at 589). The ALJ then noted, without explaining how he reached this conclusion: "This applicant was fully aware that his 1983 application for disability benefits had been denied." (Tr. at 589). Thus, the ALJ recognized that the denial notice was sent to the plaintiff and that the plaintiff was aware that he was denied, but the ALJ refused to concede that plaintiff's awareness of the denial was the result of the receipt of the defective notice. The Court agrees with the plaintiff, and with the ALJ's inference, that it likely that plaintiff received the denial notice followed by an oral communication with an SSA employee, both of which conveyed inaccurate information.[8]

It is undisputed that the language in the August 1983 denial was defective and misleading. (Dkt. # 15 at 2–3; SSR 95–1p 1995 (S.S.A.)(stating that in 1984, and again in 1990, SSA made revisions to the defective notices, explaining more clearly the differences between seeking administrative review and filing a new application)). However, the ALJ's decision provided: "Even if it is assumed that [plaintiff] did read the notice and did make a telephone call to the Social Security Administration to ask for clarification, it is not clear that the claimant was provided with information that was inadequate or incomplete." (Tr. at 588). The ALJ had before him the testimony of the plaintiff, explicitly stating that he orally received defective notice. Plaintiff testified that when he spoke with the SSA employee, he was given the same information as was included in the defective written denial notice—plaintiff was denied and could reapply at any time. (Tr. at 605). Plaintiff was not in-

---

8. Even if plaintiff only relied on the telephone conversation, that communication conveyed the same information provided in the defective notice that is the subject of SSR 95–1p.

formed of the difference between requesting reconsideration of the denial and filing a new application, nor was he advised that he has a right to appeal the decision. (Dkt. # 13, at 12). Yet, despite plaintiff's testimony the ALJ found: "Absent a transcript of the alleged telephone conversations, [he] has no reason to believe that the Social Security Administration representative failed to tell [plaintiff] that adverse consequences could result if he failed to file a timely request for reconsideration. It is possible that he was given such information and failed to act upon it." (Tr. at 588). Additionally, the ALJ found that "It would be reasonable to assume that such representative [with whom plaintiff spoke] informed [plaintiff] concerning the time limit prescribed during which an application [for] reconsideration must be filed." (Tr. at 589).

In addition to testifying to the communication of his denial, plaintiff linked his failure to file a timely request for administrative review. Plaintiff testified that after he received the negative determination, he did not do anything about it (Tr. at 610); he did not contact a lawyer because "Nobody told [him he] could," and, like the plaintiff in *Rooney,* he had "[no] knowledge of appeals, or anything like that." (*Id.; see Rooney,* 879 F.Supp. at 255 (plaintiff, proceeding pro se, filed a new application two years after her initial denial because she was unaware that reapplication was not the same as requesting a hearing.)). Furthermore, when plaintiff applied for reconsideration of his denial in this case, he testified: "I am unable to work. The reason I did not work 1981 to 1986 was I was disabled at that time. I did not know that I could have appealed my denial." (Tr. at 81; *see Rooney,* 879

F.Supp. at 255 (believing reapplication and requesting a hearing to be equivalent, plaintiff filed a new application.)).

■■ At this level of review, the Court must decide whether the ALJ's determination is supported by substantial evidence. *See Balsamo,* 142 F.3d at 79. Plaintiff testified that the information he received was inadequate and incomplete. Yet, without making any credibility determinations about the plaintiff and his testimony, the ALJ concluded that it was possible that information regarding the time limit and the adverse consequences was in fact given to the plaintiff by the Social Security Administration representative.[9] The evidence reflected in the hearing transcript is not such that a reasonable mind would accept as adequate to support this conclusion. Consequently, the ALJ's finding that plaintiff did not establish good cause for failing to request the reconsideration is not based on substantial evidence. Pursuant to SSR 95–1p, the ALJ has jurisdiction to review plaintiff's claim as though plaintiff had filed a timely request for reconsideration. Additionally, the ALJ must determine plaintiff's insured status consistent with 20 C.F.R. § 404.130(f).

### D. Coverage of Gonzalez v. Sullivan and AR 92–7(9)

Plaintiff asserts that he is entitled to the relief afforded in *Gonzalez v. Sullivan,* 914 F.2d 1197 (9th Cir.1990) and AR 92–7(9). (Dkt. # 13, at 8, 18–20). The *Gonzalez* court held that a notice, identical to the denial notice at issue in this case, that does not clearly indicate that if no request for reconsideration is made, the determination is final, violates an applicant's Fifth

---

**9.** Although the Secretary is free to accept or reject the testimony of the plaintiff, a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 260–61 (2d Cir.1988) (citation omitted).

Amendment right to procedural due process. *Gonzalez*, 914 F.2d at 1203. The Ninth Circuit held that receipt of such defective notice alone entitles claimants to have their claims reopened. *Id.*

 The Commissioner issued AR 95–7(9), shortly after the court's ruling in *Gonzalez*, providing that "a new determination based on the merits of the claim must be issued" if (1) the claimant received a notice like that received by Mr. Gonzalez, as described above; (2) the claimant filed a subsequent application; and (3) the claimant requested a reopening of the prior initial determination. AR 95–7(9) 1992 (S.S.A.). Although these three steps apply to plaintiff, plaintiff may not avail himself of such a remedy because AR 95–7(9) explicitly reads: that "This Ruling applies only to cases involving claimants who: (1) reside in Alaska, Arizona, California, Guam, Hawaii, Idaho, Montana, Nevada, Northern Mariana Islands, Oregon, or Washington...." AR 95–7(9) 1992 (S.S.A.). Plaintiff argues that the "effect of a violation of the plaintiff's due process rights as identified in *Gonzalez* cannot be limited to the territorial reach of one U.S. Circuit Court of Appeals." (Dkt. # 13, at 20). While plaintiff is correct to point out that the "Constitution of the United States, at last check, applies in *all* Circuits[ ]" (*id.*), many circuits have found that AR 95–7(9) is not binding in their jurisdiction. *See Loudermilk v. Barnhart*, 290 F.3d 1265, 1269 n. 2 (11th Cir.2002); *Yeazel v. Apfel*, 148 F.3d 910, 912 (8th Cir.1998); *see also Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir.2001)(noting that AR 95–7(9) is only applicable in their circuit); *see also Torres v. Shalala*, 48 F.3d 887, 891–892 (5th Cir. 1995)(a Second Circuit case entitling a class of plaintiffs to specified relief is limited to that circuit). The ALJ and Appeals Council correctly found that plaintiff may not avail himself of the remedy set forth in *Gonzalez* and AR 95–7(9).

## V.  CONCLUSION

Accordingly, for the reasons stated above, the court concludes that the plaintiff's Motion to Reverse the Order of the Commissioner (Dkt.# 12) is *granted in part and denied in part* and defendant's Motion for Order Affirming the Decision of the Commissioner (Dkt.# 14) is *denied in part and granted in part.* The case is *remanded* to the ALJ for further proceedings consistent with this ruling.